UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Joe Ward, | C/A No. 4:12-3303-SB-TER |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| DR. MUNIZ; NURSE CATHY BROWN; NURSE HARRIS; AND NURSE ROSHELL SMITH | |
| Defendants. | |

Joe Ward ("Plaintiff"), proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983.[1] At all times relevant to the allegations in the complaint, Plaintiff was housed at the Aiken County Detention Facility (ACDC). Defendants filed a motion for summary judgment on June 6, 2013, along with a memorandum and exhibits in support thereof. Because Plaintiff is proceeding *pro se*, he was advised on or about June 11, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendants' motion for summary judgment could result in dismissal of his complaint. Plaintiff filed a response and opposition, Defendants filed replies and Plaintiff filed sur-replies. (Docs. # 60, 61, 64, 68, 70, 72).

---

[1] Pursuant to the provisions of 28 U.S.C. §636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Court.

DISCUSSION

A. STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving

party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## B. ARGUMENT OF PARTIES/ANALYSIS

**Medical Indifference**

Plaintiff alleges that he was jailed at the ACDC from April 6, 2011, until October 21, 2011, when he was transferred into the custody of the South Carolina Department of Corrections. Plaintiff contends that at the time of his arrest, he had a pre-existing eye disease, glaucoma, and a pre-existing large hernia. Plaintiff asserts that he reported to the ACDC that he had serious medical needs and requested to be seen by a doctor for his large hernia and to be seen by an eye physician. Plaintiff states that despite knowing that plaintiff had glaucoma, and that Plaintiff suffered with a large hernia,

3

ACDC and their officials did nothing for his serious medical needs. However, Plaintiff asserts that he was taken to the Aiken Regional Medical Center on April 7, 2011, due to pain from the hernia. Plaintiff alleges he was told he needed surgery, but the ACDC would not send him to medical to set a time for the surgery on his hernia. Plaintiff contends that he completed several grievance forms about medical refusing to see him concerning the requested hernia surgery. Plaintiff asserts that Nurse Cathy Brown never examined him but sent Nurse Diane and Nurse Harris to tell him he could not have the hernia surgery. Plaintiff alleges that he was not examined or seen at medical for "the entire six (6) months that plaintiff was incarcerated at the Aiken County Detention Center." (Amended complaint, doc.# 1 at 5). Plaintiff contends he was given Tylenol for pain. Plaintiff alleges that the doctor at ACDC, Dr. Muniz, refused him medical treatment and deliberately refused to see Plaintiff for his large hernia causing him to be subjected to deliberate indifference to his serious medical needs. Plaintiff alleges that he filled out a medical request form on April 12, 2011, to be seen by medical concerning his glaucoma, but Nurse Brown and Dr. Muniz refused Plaintiff medical treatment even when he complained of severe migraine headaches and pain in his eye-balls. Plaintiff asserts that he did not have his eye drops to reduce the pressure in his eyes. Plaintiff asserts that he has had Glaucoma for over ten years and intentional delay of treatment by the Defendants caused damage to his eyes. Specifically, Plaintiff alleges that even though he requested to see a doctor, he did not see one which caused injury to his optic nerve due to the delay in treatment. On June 17, 2011, Plaintiff contends he was taken to be examined by Dr. Enoch, an Ophthalmologist, who opined Plaintiff had received damage to his eyes. Plaintiff alleges that Nurse Brown, Dr. Muniz, Nurse Harris, Nurse Smith, Nurse Diane, and Nurse Laura knew or should have known that

he had Glaucoma and a large hernia that required surgery. Plaintiff requests actual and punitive damages.

Defendants argue they are entitled to summary judgment because Plaintiff has not established a federally protected claim. Defendants assert that while Plaintiff argues that he had medical needs that the Defendants were indifferent to, they have medical records and progress notes which show Plaintiff did receive care for his medical condition. Defendants submitted the affidavit of Cathy Brown who attests that she has been an LPN at ACDC since April 1, 2002, and is the medical team administrator there. (Brown affidavit, doc. # 42-3). Brown asserts that she has supervisory control over the medical records of the inmates at ACDC and is familiar with the allegations in Plaintiff's complaint. Id. Plaintiff was seen the day after his arrest at the ER at the Aiken County Hospital where his hernia was reduced. Plaintiff's glaucoma was addressed within the first several days by sending for Plaintiff's records from his ophthalmologist once he advised the name so that she could order appropriate medication for his eyes. Id. Plaintiff was a transfer from the State of Georgia but when received by the ACDC, he did not have any prescriptions for medications for either the hernia or the glaucoma. Id. The ER physicians at the local hospital reduced the hernia, which means it was placed back where it came from, and that surgery was not required. Id. As to other physical complaints, Plaintiff was given a medical screening on the day he was arrested, April 6, 2011, for Plaintiff to report any medical conditions for which he was suffering and needed medical care. Id. A history and physical was performed by the medical staff on April 18, 2011. Id. Progress notes in the medical chart show that Plaintiff was seen at the local ER on April 7, 2011, where his hernia was reduced. He had a history and physical examination on April 18, 2011. Id. Plaintiff signed a request for records from Casella Eye Center in regards to his glaucoma. Id. Pending the receipt of his

records, Dr. Muniz, the physician at the ACDC, ordered eye drops until such time as the records were received. Id. On May 18, 2011, Plaintiff refused to use the eye drops. Id. On June 16, 2011, Plaintiff's ophthalmologist was called and an appointment made for June 17, 2011, for which Plaintiff was taken and received new eye drops. Id. Plaintiff refused to go to his follow-up appointment scheduled on July 14, 2011. Id. On July 29, 2011, Plaintiff complained of sores on his back, side, and stomach. He was seen by the medical staff and diagnosed with shingles. Id. He was seen by the physician and treated for pain with Neurontin for ten days. Id. On August 12, 2011, Plaintiff complained that his left arm was broken, but it was noted that when using eye drops Plaintiff used his left arm to raise the drops above his head in order to put them in his eyes. Id. On August 19, 2011, x-rays were taken by the Southeast X-ray, Inc. United Mobile Imaging of his left arm which did not show any break or dislocation. Id. In August 2011, Plaintiff requested and was seen by the mental health representative, Ms. Penne. Id. In October 2011, Plaintiff was put on medical observation watch due to his complaint of heart problems, which he did not have, but the observation watch was a precaution taken by the medical staff in Plaintiff's best interest. Id. The medical chart reveals that he had five doctor visits, one with Dr. White, one with Dr. Muniz, one with the ER doctor, one with the ophthalmologist, and one with Dr. Zimmerman for his arm x-ray in addition to many visits by the nursing staff. Id.

Defendants submitted the affidavit of Dr. Leopoldo M. Muniz who attests that he is a board certified family medicine practitioner practicing in Aiken, South Carolina. (Muniz affidavit, doc. # 42-6). He has a contract with Southern Health Partners, Inc., to provide medical care for inmates at the ACDC. Id. Muniz is familiar with the medical record of Plaintiff and that "although the Plaintiff complains that he was not seen by a physician, or by anyone else for that matter for his hernia and

glaucoma, affiant knows of his own knowledge that he Plaintiff was seen numerous times and at least six times by various physicians. On the day after Plaintiff was arrested he was sent to the ER at the local hospital for hernia reduction. Plaintiff's complaints of glaucoma were addressed by contacting Plaintiff's own ophthalmologist and arranging an appointment for him to see the doctor. Medications were provided for the glaucoma and medical care was never denied." Id. Muniz attests that neither he nor any of the medical staff at the SCDC were deliberately indifferent to any severe illness or injury suffered by the Plaintiff, but provided medical care for those conditions demonstrated by Plaintiff to the staff.

In his replies, Plaintiff argues that even though the Defendants sent him to the emergency room for his hernia, the doctors only reduced the hernia, he did not receive surgery, and the Defendants refused to send him back for surgery. Plaintiff also attaches some medical records from Parkridge Surgery Center dated April 2, 2012, where he had a surgical repair of his hernia. (DOC.#64-1, p. 1). He also attached a letter from Dr. Enoch Tsai, an Ophthalmoloist located in Aiken, South Carolina, dated April 19, 2013, discussing the eye care that was given beginning on June 17, 2011. (Doc. # 60-1, p. 10). Dr. Tsai revealed Plaintiff had swelling of the optic cupping in each eye. He was advised to use eye drops and to return for a pressure check in four weeks. Id. He was seen again on October 6, 2011, still complaining of problems. Plaintiff was instructed to return in six months to monitor his pressure. Id. The Defendants argue that the medical records not related to the time period he was housed at the ACDC should not be considered.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening,

8

and the Defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Similarly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989); Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Even if Plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. He was admitted into the ACDC on April 6, 2011, complaining of a hernia and glaucoma. As to his hernia,

9

Plaintiff was sent to the emergency room on April 7, 2011, where the hernia was reduced. (See Exhibit 1, notes of April 7, 2011). As to his glaucoma, the medical staff had Plaintiff sign medical release forms to obtain his records from his Ophthalmologist so that the proper medication could be ordered. However, while waiting on the records, Dr. Muniz ordered eye drops to treat Plaintiff's condition, but he refused to use them saying they were the wrong drops. On June 16, 2011, medical called Plaintiff's Ophthalmologist for an appointment which was made for June 17, 2011. Plaintiff was taken to this appointment and returned with new eye drops. Plaintiff was scheduled for a follow-up appointment for July 14, 2011, but refused to go[2]. (See Exhibit 3, notes of July 14, 2011). Plaintiff has not submitted any evidence showing that any damage to his eyes was caused by an alleged delay in treatment. Plaintiff was seen by the medical staff at ACDC and by other physicians during the six months he was housed at the ACDC. Plaintiff has failed to show that he had a serious medical need of which Defendants knew about and consciously ignored. Plaintiff has not shown that any conduct by the Defendants "shocks the conscious" as required by Miltier v. Beorn, supra. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel generally fails to state a claim. Although there is nothing to indicate that there were

---

[2] Plaintiff argues in reply that the reason he refused to go was because the restraints placed on him for transport to the doctor were too tight and hurting his hernia. Plaintiff submitted a copy of an inmate grievance form wherein he complained that the restraints were too tight. The response was that he refused to be properly restrained. (Doc. #60-1, p. 13).

mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. Russell v.Sheffer, supra.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the Plaintiff.[3] For the above stated reasons, summary judgment should be granted in favor of Defendants on this issue.


**Pendent Jurisdiction**

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).


**CONCLUSION**

Based on the above reasoning, Plaintiff has failed to show that Defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

---

[3] If Plaintiff is attempting to hold any of the Defendants liable for the actions of their employees, the claim fails. Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982).

RECOMMENDED that the motion filed by Defendants (doc. #42) for summary judgment be GRANTED IN ITS ENTIRETY.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

October 31, 2013
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**